**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

JERMAINE TYRONE FULLER,

    Movant,

  v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL ACTION NO.: 2:21-cv-37

(Case No.: 2:18-cr-50)

## ORDER AND REPORT AND RECOMMENDATION

  Movant Jermaine Fuller ("Fuller"), who is currently housed at the Federal Correctional Institution-Williamsburg in Salters, South Carolina, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Doc. 1. The Government filed a Response, and Fuller filed a Reply. Docs. 4, 5. For the reasons which follow, I **RECOMMEND** the Court **DENY** Fuller's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Fuller *in forma pauperis* status on appeal and a Certificate of Appealability. I **DENY** Fuller's Motions to Appoint Counsel and for Evidentiary Hearing. Doc. 2.

## BACKGROUND

  Fuller was charged and indicted, along with 17 co-defendants, for conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (count 1), and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841 (count 13). United States v. Fuller, 2:18-cr-50 (S.D. Ga.) ("Crim. Case"), Doc. 154. Fuller faced a sentence of not less than 10 years' imprisonment

nor more than life on count 1 and not more than 20 years' imprisonment on count 13.  Crim.

Case, Doc. 155.  Fuller's appointed counsel, Marvin Hicks, III, filed several motions on Fuller's

behalf.  Crim. Case, Docs. 306–15.  Fuller and Mr. Hicks were able to negotiate a plea

agreement with the Government whereby Fuller agreed to plead guilty to a lesser included

offense of the conspiracy charge (count 1).  Crim. Case, Doc. 496.  In exchange, the Government

agreed to not object to a recommendation Fuller receive a three-level reduction for acceptance of

responsibility and move the Court to dismiss the remaining count (count 13) against Fuller.  Id.

at 4.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing.

At the outset of this hearing, Judge Wood informed Fuller the purpose of the hearing was

to make sure he understood the case pending against him, all the rights he was giving up if Judge

Wood accepted his plea, was pleading guilty because that was what he wanted to do after

consultation with Mr. Hicks, and there was a factual basis for the plea.  Crim. Case, Doc. 793 at

2–3.  During the plea hearing, Task Force Officer ("TFO") Michael Sapp with the Federal

Bureau of Investigation Coastal Georgia Violent Task Force provided the factual basis for the

plea, Fuller admitted to the truth of Sapp's testimony, Judge Wood accepted Fuller's plea, and

Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation

report ("PSR").  Id. at 21–32.  Judge Wood later sentenced Fuller to 137 months' imprisonment.

Crim. Case, Doc. 693.

Fuller has now filed a § 2255 Motion to challenge his sentence.  Doc. 1.  The

Government filed a Response, and Fuller filed a Reply.  Docs. 4, 5.  This matter is fully briefed

and ripe for the Court's review.

## DISCUSSION

Fuller raises three claims of ineffective assistance of counsel.  Docs. 1, 2.  First, Fuller asserts Mr. Hicks advised him to plead guilty to the lesser included offense based on the understanding Fuller would not face more than eight years in prison.  Doc. 2.  Fuller also asserts Mr. Hicks failed to object to the Court's drug quantity findings.  Finally, Fuller contends Mr. Hicks rejected the Government's "binding" offer of Fuller receiving a sentence of 110 months' imprisonment.[1]  The Government responds Fuller's assertions are without merit.

## I.    Ineffective Assistance Claims

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and also extends to sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is

---

[1]      In his Reply, Fuller concedes the Government did not make a binding offer for him to receive a sentence of 110 months in prison.  Doc. 5.  Thus, the Court need not address this contention further.  If the Court were to address the relative merits of this contention, however, it would find Fuller's contention to be fully and completely contradicted by the record.

petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States,

4

Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

### A.      Counsel Did Not Provide Ineffective Assistance During Plea Process

Fuller asserts Mr. Hicks had his consent to enter into plea negotiations with the Government. Doc. 2 at 2. Fuller states Mr. Hicks advised him of the statutory minimum and maximum and his Guidelines' range as a result of the plea negotiations and also advised Fuller it was in his "best interest" to accept the plea offer because he would not face more than eight years' imprisonment under the Guidelines. Id. Fuller notes TFO Sapp testified during the Rule 11 hearing he was to be attributed with 3,393 grams of cocaine based on the wiretaps. Id. Fuller claims had Mr. Hicks advised about the increase in drug attribution and how it could have affected his sentencing exposure, there is a "reasonable probability" he would not have pleaded guilty and would have gone to trial and had a jury "determine the drug weight." Id. at 4. Fuller argues, even if he was fully aware he could have been sentenced to more than eight years in prison when he pleaded guilty, that awareness is not dispositive of the issue. Id. Fuller contends he relied on and trusted Mr. Hicks' assertions regarding sentence exposure. Id. at 4–5.

The Government argues Fuller's contentions are conclusory and the record "absolutely contradicts" his claims Mr. Hicks promised him he would not be sentenced to more than eight years' imprisonment.  Doc. 4 at 17.  In addition, the Government contends the record clearly shows Fuller understood at his Rule 11 hearing he could be sentenced between 5 and 40 years' imprisonment by statute and could be sentenced outside the Guidelines' range.  Id. at 19.  The Government states Fuller's guilty plea was knowingly and voluntarily made and he cannot demonstrate either prong of the Strickland test.  Id. at 21.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."  Lee v. United States, 137 S. Ct. 1958, 1965 (2017).  "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted).  A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors."  Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)).  "Further, the decision to reject the plea must have been 'rational under the circumstances.'"  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "Judicial

scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *10 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (quoting Strickland, 466 U.S. at 689).

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of

the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74 (1977).  The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  <u>Id.</u>

Fuller and Mr. Hicks were able to negotiate a plea agreement with the Government whereby Fuller agreed to plead guilty to a lesser included offense of the conspiracy charge (count 1).  Crim. Case, Doc. 496 at 1.  In exchange, the Government agreed to not object to a recommendation Fuller receive a three-level reduction for acceptance of responsibility and move the Court to dismiss the remaining count (count 13) against Fuller.  <u>Id.</u> at 4.  The plea agreement set forth the statutory elements and factual basis of the offense to which Fuller was pleading guilty.  <u>Id.</u> at 1–2.  Fuller agreed he was guilty of the offense.  <u>Id.</u> at 11.  Additionally, Fuller agreed no one had promised him a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a).  <u>Id.</u> at 3.  Further, Fuller affirmed he had read and reviewed the agreement with Mr. Hicks, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  <u>Id.</u> at 11.

Fuller appeared before Judge Wood for his Rule 11 proceeding.  Judge Wood addressed Fuller and informed him the purpose of the hearing was to ensure he understood the case pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Hicks, pleading guilty was what Fuller wanted to do.  Crim. Case, Doc. 793 at 2–3.  Judge Wood inquired whether anyone

had made, pushed, or leaned on Fuller to offer to plead guilty, and he said no one had done so and pleading guilty was what he wanted to do.  Id. at 3.

After Fuller was sworn in, Judge Wood told Fuller he did not have to plead guilty.  Id. at 7.  Judge Wood also told Fuller, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout the trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at 7–8.  However, Judge Wood cautioned Fuller he would be waiving these rights if he pleaded guilty and she accepted that guilty plea.  Id. at 8.  Fuller stated he understood and had no questions about the waiver of his rights.  Id.  When Judge Wood asked Fuller how far he had gone in school, Fuller informed her he completed 11th grade and obtained his GED (General Equivalency Diploma).  Id. at 4–5.  Judge Wood inquired whether Mr. Hicks and Fuller went through the documents involved in the case, including the superseding indictment and plea agreement, and Fuller said he and Mr. Hicks had gone over the facts and law of his case, the superseding indictment, and the plea agreement together.  Id. at 7–8.  Fuller stated Mr. Hicks had spoken with him in general terms about the advisory Sentencing Guidelines and affirmed he was satisfied with Mr. Hicks' representation and had no complaints "whatsoever."  Id. at 8–9.

Judge Wood reviewed the superseding indictment with Fuller, the essential elements of the crime to which he was pleading guilty (specifically, offering to plead guilty to 500 grams or more of cocaine and 5 grams or more of methamphetamine)[2] and the other count of the

---

[2]    At the Rule 11 hearing, Fuller did state he thought he was "just pleading to 500 grams[]" and the 5 grams of methamphetamine "would be thrown away . . . ."  Crim. Case, Doc. 793 at 10.  Judge Wood wanted to ensure everybody present was on the same page about what Fuller was pleading guilty to and reminded Fuller the decision to plead guilty was his, after consultation with Mr. Hicks.  Id. at 10–11.  Judge Wood ensured Fuller understood, as charged in the superseding indictment, he would be faced with

indictment naming him, and what the Government would have to prove on the essential elements.  Id. at 9–10, 12.  Judge Wood advised Fuller to convict him of the lesser included offense of count 1 of the superseding indictment, the Government would have to prove beyond a reasonable doubt three essential elements: (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess 500 grams or more of a mixture or substance containing a detectable amount of cocaine and 5 grams or more of a mixture or substance containing a detectable amount of methamphetamine, both of which are Schedule II narcotics; (2) Fuller knew of the unlawful purpose of this plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute and to distribute cocaine and methamphetamine.  Id. at 12–13.  By pleading guilty, Judge Wood noted Fuller was admitting the essential elements of the crime to which he intended to plead guilty were satisfied.  Id. at 13.

Judge Wood advised Fuller the maximum sentence she could impose for the lesser included count was not less than 5 years nor more than 40 years in prison.  Id. at 14.  Fuller stated he understood, even reiterating the offense to which he was offering to plead guilty carried with it a minimum sentence of 5 years.  Id.  Moreover, Judge Wood explained to Fuller, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 15.  Judge Wood also stated she would consider some "major factors," including Fuller's criminal history, his role in the offense, and whether he told the truth and accepted responsibility.  Id.  Fuller stated he understood and had no questions.  Id. at 15–16.  Judge Wood inquired whether anyone had promised Fuller an exact sentence, and Fuller stated no one had, to which Judge Wood

---

responsibility for the conspiracy involving 280 grams or more of crack cocaine, 50 grams or more of methamphetamine, and 5 kilograms or more of cocaine.  Id. at 11–12.  Despite his initial hesitation, Fuller unequivocally confirmed he understood he was pleading guilty to 500 grams or more of cocaine *and* 5 grams or more of methamphetamine.  Id. at 10.

responded that was good because all anyone could provide Fuller was his "best estimate," which was not binding upon her.  Id. at 16.  Fuller verified Mr. Hicks had his permission to negotiate with the United States to reach a plea agreement.  Id.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Marcela Mateo noted the material provisions were:

> The defendant will plead guilty to the lesser included offense of Count 1 of the superseding indictment.  At sentencing, the Government will not object to a recommendation by the U.S. Probation Office that this defendant receive an appropriate reduction in offense level for acceptance of responsibility . . . .
>
> Contained in the plea agreement also are four waivers, the first one is a waiver of appeal in which the defendant waives his right to appeal on any ground with three exceptions.  Also[,] the defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but is not limited to a Title 28 U.S.C. Section 2255 motion, the only exception being there a claim of ineffective assistance of counsel.  Also[,] the defendant waives all rights to request information about the investigation and prosecution of his case under the Freedom of Information Act or the Privacy Act, and lastly[,] the defendant waives the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

Id. at 16–17.  Judge Wood asked Fuller if AUSA Mateo's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 18.  Fuller also stated he read the plea agreement before he signed it, and Fuller affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.  Judge Wood also discussed the appeal waiver contained in the plea agreement, including the limited exceptions if: she were to sentence Fuller above the statutory maximum; she were to sentence Fuller above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal.  Id. at 18–19.  Judge Wood also noted Fuller's plea agreement contained a collateral waiver, which was: "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method[,] including but

not limited to a 28 U.S.C. Section 2255 motion." Id. at 19. The only exception to that waiver of collateral attack, Judge Wood noted, is the right to collaterally attack based on a claim of ineffective assistance of counsel. Id.

Judge Wood then asked Fuller whether he wished to still plead guilty to the lesser included offense of count 1 of the superseding indictment because he was in fact guilty of that count, and he answered in the affirmative. Id. at 20. Judge Wood also asked Fuller whether he understood the rights and privileges he was waiving if she accepted his plea, and Fuller said he did. Id. Judge Wood determined Fuller's offer to plead guilty was made "knowing[ly]" and "voluntar[ily]." Id. at 21. Fuller agreed. Id.

The Government provided a factual basis for Fuller's plea of guilty by calling TFO Sapp to testify. Id. TFO Sapp testified he was involved in an investigation into drug trafficking in the Brunswick, Georgia area and in counties in the Middle District of Florida as early as October 2017. Id. at 23. Fuller, whose telephone was a target telephone for two wiretaps, was involved in the purchase and distribution of 78.7 ounces of cocaine from the wiretap for his phone and 41 ounces of cocaine from his father and co-Defendant's phone; these amounts converted to 3,393 grams based solely on the wiretaps. Id. TFO Sapp stated Fuller was involved in a traffic stop in September 2018 and approximately 44 grams of methamphetamine were recovered from Fuller.[3] Id. at 24. In addition, TFO Sapp noted the wiretap revealed Fuller was trying to make a deal with Robert Johnson in May 2018 for 18 ounces of a controlled substance. Id. at 25. Mr. Hicks

---

[3]       Regarding the 44 grams of methamphetamine, TFO Sapp testified the drugs were seized from Fuller during a traffic stop on September 25, 2018. Crim. Case, Doc. 793 at 27. TFO Sapp explained the drugs were in pill form and Fuller believed pills were ecstasy when he bought them. Id. Testing confirmed the pills were not ecstasy, but were, in fact, methamphetamine. Id. The PSR and comments made during the sentencing hearing refer to these pills as "ecstasy pills," but these references are plainly referring to the methamphetamine in pill form seized during the September 25, 2018 traffic stop. Additionally, there is some discrepancy in the testimony as to whether there were 44 or 45 grams of methamphetamine pills. The distinction is immaterial to the resolution of this § 2255 Motion.

cross-examined TFO Sapp.  Id. at 25–30.  Fuller did not dispute any of TFO Sapp's testimony and admitted the truth of his testimony.  Id. at 32.  Judge Wood was "satisfied" there was a factual basis for a plea, accepted Fuller's plea, and adjudged him guilty of the lesser included offense of count 1 of the superseding indictment.  Id.  Judge Wood advised Fuller a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Hicks.  Id.

To be clear, Judge Wood informed Fuller at the outset of the initial Rule 11 hearing the purpose of the hearing was for him to understand the case pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Fuller wanted to do after consultation with his attorney.  Id. at 2–3.  After telling Fuller he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the Government could prosecute him for perjury, Fuller averred no one was forcing him to plead guilty and pleading guilty was what he wanted to do.  Id. at 3.  Judge Wood discussed the specific rights Fuller was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Fuller he would waive those rights if he pleaded guilty and Judge Wood accepted his plea.  Id. at 7–8.  Fuller stated he had spoken with Mr. Hicks about the facts and law of his case, including the plea agreement, superseding indictment, and the sentencing Guidelines in general terms.  Id. at 8–9.  Fuller verified AUSA Mateo's summary of the plea agreement was consistent with the plea he had signed.  Id. at 18.  Judge Wood asked Fuller whether he wanted to plead guilty because he was, in fact, guilty of a lesser included offense of count 1 of the superseding indictment, and he answered in the affirmative.  Fuller declared he understood the rights and privileges he was waiving by pleading guilty, including appeal and collateral attack waivers, and proceeded to do so.  Judge Wood determined Fuller's guilty plea was knowing and voluntary.

Id. at 21.  TFO Sapp then provided a factual basis for Fuller's plea, and Fuller did not dispute the Government's factual basis.  Id. at 32.  Judge Wood accepted Fuller's plea and adjudged him guilty of the lesser included offense of count 1 of the superseding indictment.  Id.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Fuller's guilty plea was knowing and voluntary, and Judge Wood ensured Fuller understood he was waiving his right to collaterally attack his conviction or sentence in any manner, other than on a claim of ineffective assistance of counsel.  However, any claim Fuller makes regarding Mr. Hicks' assistance during the plea process is without merit, as Fuller cannot show cause or prejudice, nor can he show it would have been reasonable under the circumstances to have decided to go to trial.

Fuller was made fully aware of the amounts of controlled substances he would be responsible for at the Rule 11 hearing.  When Fuller expressed some hesitancy about the amounts he was pleading guilty to, Judge Wood ensured Fuller understood, as charged in the superseding indictment, he would be faced with responsibility for the conspiracy involving 280 grams or more of crack cocaine, 50 grams or more of methamphetamine, and 5 kilograms or more of cocaine.  Crim. Case, Doc. 793 at 11–12.  Judge Wood also confirmed Fuller understood he was pleading guilty to the lesser included offense, which entailed pleading guilty to 500 grams or more of cocaine and 5 grams or more of methamphetamine, resolving any of Fuller's uncertainty about the amounts.  Id.  Fuller affirmed, both in his plea agreement and during his Rule 11 hearing, no one had promised him an exact sentence.  Crim. Case, Doc. 496 at 3; Crim. Case, Doc. 793 at 16.  Fuller also testified unequivocally that no one had promised him an exact sentence.  Id.  Fuller confirmed he understood no one could promise him any particular sentence

and any sentenced he discussed with his counsel would, at most, be a "best estimate" and would not be binding on Judge Wood.  Id.  Fuller did not dispute TFO Sapp's testimony during the Rule 11 hearing attributing 3,393 grams of cocaine to Fuller based on the wiretaps in place and 44 grams of methamphetamine seized during a traffic stop; in fact, Fuller admitted the truth of TFO Sapp's testimony.  Id. at 23, 24, 32.  In addition, if Fuller had not entered a guilty plea and exercised his right to proceed to trial, he faced a sentence of not less than 10 years' imprisonment nor more than life on count 1 and not more than 20 years' imprisonment on count 13.  Crim. Case, Doc. 155.  Fuller would have also been subject to responsibility at trial for at least 280 grams of crack cocaine, 50 grams of methamphetamine, and 5,000 grams of cocaine.  Crim. Case, Doc, 154 at 3–4.  In sum, Fuller does not meet either prong of the Strickland test, nor does he show it would have been reasonable under the circumstances to proceed to trial.  Thus, the Court should **DENY** this claim.

### B.      Counsel Did Not Render Ineffective Assistance During Sentencing

Fuller contends Mr. Hicks rendered ineffective assistance during the sentencing proceedings in this case because he failed to object to the Court's finding of 9.25 kilograms of converted drug weight.  Doc. 2 at 5.  Fuller also contends Mr. Hicks "held a strong position" the converted drug weight fell under 400 kilograms, yet the Court's finding exceeded this position by more than 500 kilograms.  Id. at 6.

In response, the Government asserts Mr. Hicks objected to the weight calculation in objections to the PSR and before the Court during the sentencing hearing.  Doc. 4 at 21.  The Government reasons Fuller cannot show deficient performance or prejudice and Mr. Hicks cannot have rendered ineffective assistance.  Id. at 21–22.

A United States Probation Officer detailed Fuller's involvement in the drug conspiracy and attributed 1,584.85 kilograms of converted weight to him based on count one of the superseding indictment.  PSR, ¶ 17.  Because of the converted weight, Fuller had a base offense level of 30 and a total offense level of 27 after Fuller's acceptance of responsibility was considered.  PSR, ¶¶ 23, 30–32.  The probation officer noted Fuller had a criminal history score of 17, which was comprised of 15 points for his previous convictions and an additional 2 points because he committed the charged offenses while he under a Glynn County, Georgia sentence, and placed Fuller in criminal history VI.  PSR, ¶¶ 67–69.  For an offender with a 27 total offense level in criminal history category VI, Fuller faced an advisory Guidelines' range of 130 to 162 months in prison.  PSR, ¶ 101.

Mr. Hicks lodged objections to the PSR on Fuller's behalf.  Mr. Hicks objected to drug weight, the timing of certain transactions, and statements made during the proffer and how these matters carried over to the offense level.  Crim. Case, Doc. 794 at 6.[4]  Before hearing Mr. Hicks on these objections, Judge Wood called on AUSA Jennifer Kirkland to offer the Government's proof.  Id. at 6.  AUSA Kirkland called Robert Johnson as a witness.  Id.  Johnson described the background of his relationship with Fuller.  Id.  Johnson stated he met Michael Nixon, Fuller's father (and co-Defendant), when Johnson and Nixon were incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup").  Id. at 7.  Johnson explained when Nixon was placed in a halfway house after FCI Jesup, Nixon gave Fuller's telephone number to Johnson and gave Johnson's telephone number to Fuller.  Nixon did this so the three men—

---

[4]     Mr. Hicks noted the PSR had been revised, so the specific paragraph numbers he objected to (paragraphs 6, 9, 13, 14, 17, 23, 28, 32, 34, 35, and 101) could be different from what the final PSR set forth.  Crim. Case, Doc. 794 at 5.

Nixon, Johnson, and Fuller—could discuss dealings with a man from Peru who was also incarcerated at FCI Jesup.  Id.

Johnson testified Fuller eventually met him (Johnson) in Jacksonville, Florida, and brought with him a package containing illegal drugs Fuller had received from Peru.  Id.  Fuller brought the package to Johnson so Johnson could extract drugs imbedded in the paper in the package.  Id.  This meeting occurred around March or April of 2017.[5]  Id. at 8, 10.  Johnson stated there were supposed to be 11 ounces sent, but he and Fuller were only able to extract about 4 ounces, which they split evenly (2 ounces each).  Id. at 9.

Additionally, Johnson estimated he sold cocaine to Fuller at least twice a month from March or April 2017 through June 2018 (Nixon was released from custody) and one additional time between June 2018 and September 2018.  Id. at 11.  Each time Fuller bought cocaine from Johnson, it was six to nine ounces, other than one time when Fuller bought a whole kilogram.  Id. at 11, 14.  Johnson noted Fuller also bought marijuana and ecstasy pills from him and bought at least 100 pills on 6 to 9 separate occasions.  Id. at 13.  Mr. Hicks cross-examined Johnson and played a portion of Johnson's October 4, 2018 interview with law enforcement, specifically asking Johnson about the amounts and types of drugs he gave to Fuller and how many occasions he sold drugs to Fuller.  Id. at 15–25.

The Government also called TFO Sapp to testify.  Id. at 27.  TFO Sapp testified he, as one of the lead investigators in this case, listened to wiretap calls, executed multiple search warrants, conducted proffer interviews with several co-defendants, conducted surveillance, and used GPS tracking on different vehicles.  Id. at 27–28.  TFO Sapp stated the conspiracy began as

---

[5]     Johnson described how drugs were extracted from paper.  This process requires soaking papers in 100-proof alcohol overnight and placing the soaked papers over a cooking pot, allowing the alcohol to evaporate, leaving behind cocaine.  Crim. Case, Doc. 794 at 9.

early as October 2017.  TFO Sapp testified Fuller was captured on three wiretaps; his father

(Nixon) was the target of one, and Fuller was the target of the other two.  Id. at 28.  TFO Sapp

testified Fuller could be attributed with being responsible for approximately 2.6 kilograms of

cocaine based solely on the amounts he ordered on the wiretaps from April 12 through June 14,

2018.  Id. at 29, 35.  TFO Sapp also testified officers conducted a search of Fuller's residence on

June 14, 2018, during which officers recovered several used, flip-style, throwaway phones and

forged prescriptions for Roxicodone pills.  Id. at 30.  TFO Sapp stated Fuller was arrested on

September 25, 2018, at which time officers recovered a small amount of marijuana and 45 grams

of ecstasy pills (later determined to be methamphetamine) and five cell phones.  Id. at 31.  TFO

Sapp also stated there was some weight that was not reflected in the PSR and, if that amount was

subtracted, 2.39 kilograms of cocaine should still be attributed to Fuller.  Id. at 35–36, 37.

Further, TFO Sapp asserted an additional 3.6 kilograms of cocaine could be attributed to Fuller

based on Johnson's first proffer.  Id. at 38–39.  Mr. Hicks cross-examined TFO Sapp about

searches involving Fuller—searches of Fuller's vehicles, a hotel room, and a residence on June

14, 2018, and a traffic stop on September 25, 2018.  Id. at 39–45.  TFO Sapp confirmed nothing

was seized from Fuller during the June 14, 2018 searches.  Id. at 43–45.  TFO Sapp confirmed

only ecstasy pills (later determined to be methamphetamine) were seized from Fuller during the

September 25, 2018 traffic stop.  Id. at 39–40.  During this questioning and later argument, Mr.

Hicks highlighted Fuller was not in possession of cocaine or large sums of cash during these

searches, despite the fact TFO Sapp testified Fuller was engaged in large-scale cocaine

transactions during this time.  Mr. Hicks used this questioning and TFO Sapp's responses to

argue Fuller should be attributed with a lower quantity of cocaine.  Id. at 50–51.

After the Court heard the Government's argument, Mr. Hicks argued his cross-examinations "made clear" the case hinged on Johnson's credibility since Johnson was the source of the majority of information contained in the PSR.  Id. at 49.  While the Government stated law enforcement recovered prescriptions and cell phones from Fuller, they did not recover "all these kilograms of cocaine" Fuller allegedly dealt.  Id.  Instead, Mr. Hicks contended Fuller was dealing primarily in pills, as that was what he was addicted to and was the first thing Johnson identified during his initial interview with law enforcement.  Id. at 50.  Mr. Hicks stated Johnson did not "remember" Fuller having bought cocaine from him on a weekly or bi-weekly basis until six months after his first contact with law enforcement.  Id.  In addition, Mr. Hicks stated the evidence indicates Fuller "dealt in approximately two and a half kilograms of cocaine, some marijuana during the traffic stop, [and] some pills during a traffic stop."  Id. at 51.  Mr. Hicks argued the converted drug weight would be under the 400 kilograms, which would result in a base offense level of 24, and, with Fuller's credit for acceptance of responsibility, a total offense level of 21.  Id.

Judge Wood sustained in part and overruled in part Mr. Hicks' objections to drug amounts, timeframes referenced based on Johnson's testimony, and mathematical calculations.  Id. at 53–54 (referencing paragraphs 6, 9, 13, 14, 17, 23, 28, 32, and 101).  Judge Wood found by a preponderance of the evidence "the best available drug calculation" was around 9.25 kilograms, or "923.18, to be exact[,]" based on testimony, recorded calls, and the totality of the circumstances.  Id. at 54.  Based on this finding, Judge Wood found Fuller's base offense level to be 28 (compared to 30, as stated in the PSR) and his total offense level to be 25 after acceptance of responsibility (compared to 27).  Id. at 54–55.  Judge Wood also found Fuller's criminal

history remained at VI, which resulted in a Guidelines' range of 110 to 137 months' imprisonment.  Id. at 55.

Mr. Hicks then spoke on Fuller's behalf again, stating he was a business owner and sponsored part of an "adopt-a-highway" roadway and needed help for his pill addiction.  Id. at 55–57.  Mr. Hicks asked Judge Wood to sentence Fuller to the lower end of the Guidelines' range.  Id. at 57.  AUSA Kirkland argued for a sentence on the higher end, in consideration of Fuller's extensive criminal history and admissions.  Id. at 57–58.  Fuller addressed the Court and stated he had admitted responsibility for having gone to Jacksonville three times to buy cocaine from Johnson.  Id. at 58–59.  Fuller also described steps he had taken to better himself.  Id. at 60–61.

Judge Wood specifically noted the sentence imposed would not be based on Fuller's proffer but would be based on the § 3553 factors she considered as to Fuller.  Id. at 61–62.  She also considered each attorney's statements, the evidence presented, the PSR, and Fuller's statements.  Id. at 62.  Judge Wood noted Fuller's "significant criminal history[,]" which consisted of 25 prior adult convictions, even though some of them were "minor."  Id.  Judge Wood noted Fuller accepted responsibility and admitted to some of his actions and it was her duty to consider "the good and the bad."  Id. at 63.  Judge Wood sentenced Fuller to 137 months in prison, because of his extensive criminal history and because this was his third felony conviction for controlled substances, which he committed while on state probation for felony fleeing.  Id.

Fuller fails to establish Mr. Hicks rendered deficient performance, as he objected to the weight attribution, Johnson's proffer, and certain timing issues.  Mr. Hicks made the specific argument Fuller does now—he should have been responsible for a converted drug weight under

20

400 kilograms, which would have resulted in a base offense level of 24, and, with Fuller's credit

for acceptance of responsibility, a total offense level of 21.[6]  Mr. Hicks simply was unsuccessful

in this argument.  In addition, even if Mr. Hicks had performed deficiently, Fuller cannot show

he was prejudiced by any alleged deficient performance.  Judge Wood stated she would have

imposed the 137-month sentence she did based on the § 3553 factors, because of Fuller's

criminal history and this being Fuller's third controlled substance felony conviction, which took

place while he was on state probation.  Because Fuller fails to show any deficient performance or

any prejudice, as Strickland requires, the Court should **DENY** this portion of his § 2255 Motion.

Demar, 228 F. App'x at 950.

## II.     Motions for Evidentiary Hearing and to Appoint Counsel, doc. 2 at 7

Fuller requests in passing the Court appoint counsel for him and conduct an evidentiary

hearing.  Doc. 2 at 7.  The Court **DENIES** both Motions.

### A.     Appointment of Counsel

There is no automatic constitutional right to counsel in post-conviction proceedings in a

criminal case.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb,

565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F. 3d 1222, 1227 (11th Cir.

2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985); see also Barbour, 471 F.3d

at 1227–32 (concluding even defendants sentenced to death do not have a constitutional right to

post-conviction counsel).  Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for

---

[6]        Under Mr. Hicks' argument, Fuller's Guidelines' range would have been 77 to 96 months in prison.  U.S.S.G. Table.  This may be the basis for Fuller's contention Mr. Hicks informed him he would not receive any more than eight years' imprisonment.  However, as discussed in § I.A. *supra*, even if Mr. Hicks had made any sort of promise to Fuller regarding his sentence (which the Court does not find), any such promise was not binding on Judge Wood.  And Judge Wood made it clear to Fuller at the Rule 11 hearing that she would not be bound by any such promise.  Accordingly, Fuller cannot show Mr. Hicks was deficient in his performance or that Fuller was prejudiced by this putative promise.

an indigent litigant seeking relief under §2255, but such requests are discretionary when "due process or the 'interests of justice'" so require.  Hooks, 775 F.2d at 1438; Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979); see also 28 U.S.C. § 2255(g) & Rule 8 (c) of the Rules of Governing Section 2255 Cases in the United States District Courts (authorizing appointment of counsel under § 3006A).  Moreover, appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]"  McCall v. Cook, 495 F. App'x 29, 31 (11th Cir. 2012).

The interests of justice and due process do not require Fuller to be provided with counsel during these post-conviction proceedings, and it does not appear an evidentiary hearing will be required at this time.  Fuller does not identify any circumstances in either his § 2255 Motion or the request for an attorney in his supporting brief that would require the appointment of counsel. If the Court determines an evidentiary hearing is required at some point in these proceedings, or the interests of justice or due process so require, then Court will reevaluate the need to appoint counsel to represent Fuller.

### B.  Evidentiary Hearing

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "If the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.  However, a district court is not required to hold an evidentiary hearing where the petitioner's allegations are 'affirmatively contradicted by the record, or the claims are patently frivolous.'"  United States v. Yadigarov, 840 F. App'x 487, 490 (11th Cir. 2021) (citation omitted); see also Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) ("A hearing is not required on patently frivolous

claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record.").  Moreover, a movant is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).  Because Fuller's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.  Consequently, the Court **DENIES** Fuller's Motion for an Evidentiary Hearing.

### III.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Fuller leave to appeal *in forma pauperis*.  Though Fuller has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown

v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Fuller's Motion and the Government's Response thereto and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Fuller a Certificate of Appealability, Fuller is advised she "may not appeal the denial but may seek a

certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Fuller's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Fuller *in forma pauperis* status on appeal and a Certificate of Appealability. I **DENY** Fuller's Motions to Appoint Counsel and for Evidentiary Hearing. Doc. 2.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

  **SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of November, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA